IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Cornelius Walker, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| *-vs-* | ) | No. 20-cv-261 |
| | ) | |
| Thomas Dart, Sheriff of Cook County, | ) | Judge Rowland |
| and Cook County, Illinois, | ) | |
| | ) | |
| | ) | |
| *Defendants.* | ) | |

**MEMORANDUM IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION**

The Cermak Infirmary is located at the Cook County Jail. It is one of

two buildings at the jail that complies with the ADA structural standards

suitable for housing mobility impaired inmates, according to a FY19

Business Case prepared by Sabrina Rivero-Canchola, the Sheriff's ADA

Compliance Officer. Exhibit 1 at 2. The building also contains an urgent

care clinic staffed 24/7 for the jail's population along with specialty clinics

such as physical therapy. *See* Exhibit 2, Dr. Andrew DeFuniak Testimony

from *Bowers v. Dart*, Case No. 16 C 2483, Trial at 20:19-22, 23:9-11.

Johnice Brumfield-Greer is a lieutenant assigned to Cermak. Exhibit

3, Brumfield-Greer Dep 4:15-5:4. She testified on October 11, 2019 that

there is one incline inmates must navigate to enter Cermak. Exhibit 3,

Brumfield-Greer Dep 16:23-17:12.

As depicted below from a document produced by Cook County, the

ramp does not comply with the Structural Standards for a building

constructed after 1992 because the "run exceeds code requirements":





*See* Exhibit 4 at 2.[1]

Eric Davis, the Deputy Director of the Cook County Department of

Capital Planning and Policy, testified a proposal was presented to the

County Board to allocate funds to renovate the Cermak ramp but the

request was not approved. Exhibit 6, Davis Dep 5:18-23, 35:7-36:8.  Mr.

---

[1] Cook County was ordered to produce this diagram pursuant to a court order entered in *Lacy v. Dart*, Case No. 14 C 6259. Exhibit 5, *Lacy*, 14 C 6259, ECF No. 517.

Davis elaborated that "[t]he holdup on the Cermak ramp is getting an architect hired to do the construction drawings" and that he had no expectation when the ramp would be renovated. Exhibit 6, Davis Dep 54:23-55:15, 79:1-3.

Plaintiff Cornelius Walker, a detainee, alleges his rights under the ADA and Rehabilitation Act are violated because of the ramp's structural barriers. Plaintiff seeks an order for this case to proceed as a class action pursuant to Rule 23(b)(2) for "all Cook County Jail detainees who have been assigned and currently use a wheelchair to traverse the Cermak ramp" and Rule 23(b)(3) for "all Cook County Jail detainees who have been assigned a wheelchair and used a wheelchair to traverse the Cermak ramp from May 5, 2018 to the date of entry of judgment." Plaintiff shows below he meets the requirements of Rule 23(a), (b)(2), and (b)(3).

## I.    The Cermak ramp

Cermak was constructed in 1998. *Clemons v. Dart*, 168 F.Supp.3d 1060, 1063 (N.D.Ill. 2016) (noting Cermak was constructed in 1998); *Flora v. Dart*, 2017 WL 2152392, at *4 (N.D. Ill. 2017) (Kennelly, J.) (vacated by agreement of the parties) (same). When Cermak was constructed it was required to comply with either the Uniform Federal Accessibility Standards (UFAS) or the 1991 ADA Standards for Accessible Design. *Flora*, 2017 WL 2152392, at *4; s*ee* Exhibit 7, Matthew Burke Testimony from *Bowers v. Dart*, Case No. 16 C 2483, Trial at 4:9-5:11 (Matthew Burke, a lawyer and

executive with the Sheriff's Office agreeing the ADA imposed Structural Standards for Cermak).

The 1991 Standards and UFAS set out standards that must be met for ramps. Both standards require "[t]he least possible slope shall be used for any ramp," "[t]he maximum slope of a ramp in new construction shall be 1:12," and "[t]he maximum rise for any run shall be 30 [inches]."Exhibit 8 at 518 ADAAG § 4.8.2; Exhibit 9 at 169 UFAS § 4.8.2.

The Cermak ramp does not comply with the ADA structural standards. The ramp is "47' long without a landing" and therefore the run exceeds the code requirements. *See* Exhibit 4 at 2, Copy Paste of Walkthrough from March 2018.

Defendants are aware the ramp does not comply with the ADA Structural Standards. In March 2018 Cook County inspected this ramp and subsequently requested the County Board for funds to remedy this barrier. Exhibit 6, Davis Dep 24:23-27:3. But, as explained above, Cook County has not approved funds for the construction of an ADA compliant ramp. And although Mr. Davis explained he hoped to accomplish alterations to the ramp "as expeditiously as possible" he stated he had no expectation when the ramp would be renovated and that it may take more than one year. Exhibit 6, Davis Dep 37:6-17, 54:23-55:15.

## II.    The Class Is Ascertainable

Rule 23, as applied by the Seventh Circuit, requires "that a class must be defined clearly and that membership be defined by objective criteria rather than by, for example, a class member's state of mind." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015).

Cermak Health Services Policy A-08 states the medical staff is responsible for identifying "physically disabled" inmates and must communicate "significant health needs" of inmates to correctional staff. Exhibit 10, Cermak Policy #A-08 at 1. A wheelchair is one type of alert that may be communicated to the correctional staff. *Id.* at 7.  And Rivero-Canchola testified the Jail Management System (sometimes called C-COMS) may be used to identify inmates prescribed a wheelchair. Exhibit 11, Rivero-Canchola Dep 33:6-34:11.

Records indentifying members of the putative class "provide an extremely clear and objective criterion for ascertaining the class." *Lacy v. Cook County*, 897 F.3d 847, fn. 36 (7th Cir. July 30, 2018). Plaintiff shows below that the proposed class satisfies each of the requirements of Rule 23(a) and should be maintained as a class action under Rule 23(b)(2) and (b)(3).

### III. The Proposed Class Satisfies Rule 23(a), (b)(2), and (b)(3)

A party seeking to maintain a case as a class action must show that the proposed class satisfies each of the requirements of Rule 23(a) and that the proposed class satisfies one of the subsections of Rule 23(b). *Siegel v. Shell Oil Co.,* 612 F.3d 932, 935 (7th Cir. 2010).

As the Seventh Circuit recently observed in *Beaton v. SpeedyPC Software*, 907 F.3d 1018 (7th Cir. 2018), "'certification is largely independent of the merits . . . and a certified class can go down in flames on the merits.'" *Id.* at 1031 (quoting *Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010)). Plaintiff shows below that this case satisfies all elements required for certification under Rule 23(b)(2) and (b)(3).

#### a. Numerosity

Rule 23(a)(1) requires that the proposed class must be "so numerous that joinder of all members is impracticable." The named plaintiff is not required "to specify the exact number of persons in the class," *Marcial v. Coronet Ins. Co.,* 880 F.2d 954, 957 (7th Cir. 1989), but must provide a reasonable estimate of the number of class members. *Miller v. Spring Valley Properties,* 202 F.R.D. 244, 247 (C.D.Ill. 2001). This rule is illustrated in *Phipps v. Sheriff of Cook County,* 249 F.R.D. 298 (N.D.Ill. 2008). There, the plaintiff had identified 12 class members. *Id.* at 300. The court concluded that this evidence supported the "sensible estimate" that

the class would consist of more than fifty persons and thereby satisfied the numerosity requirement of Rule 23(a)(1). *Id.* The general rule is that a class of 40 satisfies the numerosity requirement of Rule 23(a)(1). *George v. Kraft Foods Global,* 270 F.R.D. 355, 365 (N.D.Ill. 2010).

In *Lacy v. Dart,* Dart and Cook County conceded approximately sixty wheelchair users were detained at the jail at the time the parties briefed a motion for class certification. 2015 WL 1995576, at *3 (N.D.Ill. 2015). The Seventh Circuit affirmed the district court's certification of the *Lacy* class comprising of "[a]ll Cook County Jail detainees who have been assigned and currently use a wheelchair."[2] *Lacy v. Cook County*, 897 F.3d 847, 863-67 (7th Cir. 2018). It is reasonable to infer, prior to the coronavirus pandemic, the number of wheelchair users at the jail was constant. And because the jail only has two locations to house wheelchair users – Cermak and the Residential Treatment Unit (RTU) - it is safe to assume the number of wheelchair users over the past two years assigned to Cermak exceeds 40.[3] Accordingly, a reasonable estimate of the proposed class likely exceeds 150 individuals and the plaintiff satisfies the numerosity requirement of Rule 23(a)(1).

---

[2] *Lacy* was a challenge under the ADA and Rehabilitation Act concerning "purportedly inaccessible ramps and bathroom facilities at six county courthouses," *see* 897 F.3d at 851, and did not challenge movement up or down the Cermak ramp.
[3] Even if a wheelchair user was not housed at Cermak, it is likely he (or she) has navigated the Cermak ramp to attend a specialty medical clinic or the urgent care clinic.

### b. Commonality

To satisfy the commonality requirement of Rule 23(a)(3), the "prospective class must articulate at least one common question that will actually advance all of the class members' claims." *Phillips v. Sheriff of Cook Cty.*, 828 F.3d 541, 550 (7th Cir. 2016); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011).

Here, the plaintiff presents two common legal and factual questions. Is the Cermak ramp required to comply with federal Structural Standards set by the ADA and Rehabilitation Act? And, if so, does the ramp comply with these standards? As the Court of Appeals explained in *Lacy*, "[p]erhaps the most obvious example of such discrimination is when structural barriers prevent people with disabilities from accessing otherwise available public services." 897 F.3d at 853.

In *Bennett v. Dart,* Case No. 18 C 4268, the district court was presented with nearly similar questions pertaining to the application of federal Structural Standards to toilets and showers in Division 10 at the jail. The district court initially found these questions were inappropriate for class certification on a belief such a decision would run afoul of the rule against one-way intervention. Exhibit 12, *Bennett v. Dart*, Case No. 18 C 4268, ECF No. 119, Minute entry. The Court of Appeals granted the plaintiff's petition for an interlocutory appeal under Rule 23(f) and vacated the district court's decision holding:

-8-

> The district judge's view that a class cannot be certified unless the plaintiff has already prevailed on a central legal issue is a formula for one-way intervention rather than a means to avoid it. Bennett, by contrast, proposes a class that will win if the Standards apply (and were violated, to detainees' detriment) and otherwise will lose.

*Bennett v. Dart*, 953 F.3d 467,469 (7th Cir. 2020). On remand, the district court certified a plaintiff class in accordance with Rule 23(b)(3) holding commonality was satisfied because "the legal question of whether the Structural Standards control will generate class wide answers and control resolution of this case." *Bennett v. Dart*, 2020 WL 1812376 at *2 (N.D.Ill. 2020).

The same analysis in *Bennett* applies to the legal and factual questions here. The legal question of whether the federal Structural Standards control in this case will generate class wide answers and control resolution of this case.

### c. Typicality

A class representative's claims are typical of the proposed class if they "arise[] form the same event or practice or course of conduct that gives rise to the claims of the other class members and [are] based on the same legal theory." *Lacy*, 897 F.3d at 866 (7th Cir. 2018). The elements of "commonality and typicality typically 'tend to merge.'" *Priddy v. Health Care Serv. Corp.*, 870 F.3d 657, 660 (7th Cir. 2017).

It is understood that typicality does not require perfect identity of claims. *See Beaton*, 907 F.3d at 1026 (noting that claims "may feature some factual variations as long as they have the same essential characteristics" (internal quotation marks omitted)). Here, plaintiff Walker, as explained in this memorandum shares the essential characteristics of the proposed class because he uses a wheelchair to ambulate and is required to move up and down a long ramp that he alleges is not compliant with applicable federal Structural Standards. Walker filed a grievance regarding this physical barrier, *see* Exhibit 13, and elaborated in a deposition movement down this ramp caused pain and discomfort. *See* Exhibit 14, Walker Dep 29:18-31:13. For nearly identical reasons explained by the district court in *Bennett*, the Court should find plaintiff satisfies the typicality requirement. 2020 WL 1812376, at *3 ("Because the claims of Plaintiff and the class depend upon the resolution of an identical question – whether Division 10 must comply with the Structural Standards – the class satisfies typicality.").

### d. Adequacy

Plaintiff and the putative class are represented by competent counsel and they will "fairly and adequately protect the interests of the class," as required by Rule 23(a)(4). The named plaintiff is: (1) represented

by competent counsel,[4] (2) has "a sufficient interest in the outcome of the case to ensure vigorous advocacy, and (3) does not have interests antagonistic to those of the class." *Saltzman v. Pella Corp.* 257 F.R.D. 471, 480 (N.D.Ill. 2009). There can be no dispute that Walker is substantially limited in the activity of moving from place to place and uses a wheelchair to ambulate. It is also undisputed that Walker has complained to defendants about movement up and down this ramp and that he contends he is deprived the benefit of moving up and down the ramp compared to similarly situated non-disabled inmates. Plaintiff therefore satisfies the adequacy of representation requirement of Rule 23(a)(4).

### e. Rule 23(b)(2)

Rule 23(b)(2) applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

---

[4] Attorney Thomas G. Morrissey has been class counsel in several civil rights cases, including: *Hvorick v. Sheahan*, 92 C 7324 (Shadur, J.); *Watson v. Sheahan*, 94 C 6891 (Bucklo, J.); *Gary v. Sheahan*, 96 C 7294 (Coar, J.); *Thompson v. City of Chicago*, 01 C 6916 (Nolan, M.J.); *Bullock v. Sheahan*, 04 C 1051 (Bucklo, J.); *Jackson v. Sheriff*, 06 C 493 (Coar, J.); *Streeter v. Sheriff*, 08 C 732 (Castillo, C.J.); *Phipps v. Sheriff*, 07 C 3889 (Bucklo, J.); *Parish v. Sheriff*, 07 C 4369 (Lee, J.); *Zaborowski v. Sheriff*, 08 C 6946 (St. Eve. J.); *Smentek v. Sheriff*, 09 C 529 (Lefkow, J.); *Lacy v. Sheriff*, 14 C 6259 (Gettleman, J.); *Beley v. City of Chicago*, 12 C 9714 (Blakey, J.); *Bell v. Sheriff*, 14 C 8059 (Castillo, J.); *Whitney v. Khan*, 18 C 4475, (Kennelly, J.); and *Bennett v. Dart*, 18 C 4268 (Blakey, J.).

Attorney Patrick W. Morrissey has been appointed class counsel in *Lacy v. Sheriff,* 14 C 6259 (Gettleman, J.); *Beley v. City of Chicago*, 12 C 9714 (Blakey, J.); *Bell v. Sheriff*, 14 C 8059 (Castillo, J.); *Whitney v. Khan*, 18 C 4475, (Kennelly, J.); and *Bennett v. Dart*, 18 C 4268 (Blakey, J.).

The plaintiff alleges the defendants act on grounds that apply generally to the class by allegedly failing to comply with the Structural Standards required by the ADA and Rehabilitation Act. The plaintiff seeks injunctive relief against the defendants and such relief would further the goals of judicial economy because it avoids the duplicative litigation of identical claims. *See Lacy v. Dart*, 2015 WL 1995576, at \*6 (N.D. Ill. 2015). Accordingly, the Court should find the plaintiff satisfies the requirements imposed by Rule 23(b)(2).

### f.  Rule 23(b)(3): Predominance and Superiority

"Analysis of predominance under Rule 23(b)(3) 'begins, of course, with the elements of the underlying cause of action.'" *Messner v. Northshore University HealthSystems,* 669 F.3d 802, 815 (7th Cir. 2012), quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S.Ct. 2179, 2184 (2011). The predominance requirement, although similar to questions of commonality and typicality, is more demanding than either of those Rule 23(a)(2) requirements. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997).

"Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Connecticut Ret Plans & Trust Funds*, 568 U.S. 455, 459 (2013). Moreover, "the office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather it is to select the

'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'" *Id.* at 460.  The method best suited to resolve the common questions at issue in this case is a class action.

Here, the claim of plaintiff and the putative class turns upon two questions: (1) whether the ADA and Rehabilitation Act's Structural Standards apply to the Cermak ramp, and (2) if so, whether the ramp violates these standards. These questions, for nearly identical reasons explained in *Bennett* "represent[] the critical aspect, if not the totality, of Plaintiff's case, thereby satisfying predominance." *Bennett*, 2020 WL 1812376, at *3.

This may be a case where "the defendant's liability can be determined on a class-wide basis, but aggregate damages cannot be established and there is no common method for determining individual damages." *Mullins*, 795 F.3d at 671. "In this situation, courts often bifurcate the case into a liability phase and a damages phase." *Id. See e.g., Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013); *Carnegie v. Household International, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). These principals were recently applied by another district judge in *Otero v. Dart*, 306 F.R.D. 197, 207-08 (N.D. Ill. 2014):

> A class action is the superior procedure for litigating these
> claims because the Court can determine the liability of the
> alleged practice and procedure in one proceeding. The
> proposed class might include hundreds, if not thousands of
> members, many of whom are unlikely to pursue their claims

on their own. Even if damages vary among class members, the Court may hold separate liability and damages trials or appoint a magistrate judge to preside over individual damages proceedings. *Butler*, 727 F.3d. at 798; *see also Arreola*, 546 F.3d at 801.

*Otero*, 306 F.R.D. at 207-08. The same result may be required here.

In addition to satisfying the predominance prong of Rule 23(b)(3), a class action is superior to other methods for adjudicating the claims of the members of the proposed class. The district court in *Bennett* concisely explained why a class action is superior to litigate this type of claim: "[a]s the merits of Plaintiff's proposed class turn upon a single legal question, proceeding as a class achieves economies of time, effort, and expense and promotes uniformity of decision." 2020 WL 1812376, at *3. The same is true here

## IV.    Conclusion

For the reasons above stated, plaintiff requests that the Court order that this case proceed as a class action pursuant to Rule 23 (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.


Respectfully submitted,

/s/  Patrick W. Morrissey
         Patrick W. Morrissey
         Thomas G. Morrissey
         10150 S. Western Ave.
         Chicago, IL. 60643
         (773) 233-7900

         *Attorneys for Plaintiff*

-14-