IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CORNELIUS WALKER, <br><br> Plaintiff, <br><br> v. <br><br> THOMAS DART, SHERIFF, et. al, <br><br> Defendants. | Case No. 20-cv-00261 <br><br> Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Cornelius Walker, an inmate at Cook County Jail whose disability requires him to use a wheelchair, alleges that Defendants Sheriff Thomas Dart and Cook County have not repaired a non-compliant ramp at the jail, in violation of Section 202 of the Americans with Disabilities Act, 42 U.S.C. §12132 (ADA) and Section 504 of the Rehabilitation Act, 29 U.S.C. §794(a) (RHA). This Court previously denied Defendants' motion to dismiss. (Dkt. 53). Walker has moved to certify this action as a class action under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3). For the reasons explained below, Walker's motion to certify [39] is granted as to a Rule 23(b)(2) class and denied as to a Rule 23(b)(3) class.

**I. Background**

Walker has been an inmate at the Cook County Jail since September 20, 2015. (Sec. Am. Compl. (SAC), Dkt. 34 ¶ 2). Walker is a T3 paraplegic; he requires a wheelchair to move from place to place. (*Id*. ¶ 6). While detained at Cook County Jail, he has been housed in the Cermak Infirmary ("Cermak"), which is one of two

1

buildings at the jail that complies with the ADA structural standards suitable for housing mobility impaired inmates. (*Id.*; Dkt. 40 at 1). While at the jail, Walker has navigated a long ramp in the lower level of Cermak on a regular basis. (SAC ¶ 11). Based on a March 2018 walkthrough, an employee of Cook County documented that the run of this ramp "exceeds code requirements" and provided five recommendations to bring the ramp into compliance with the ADA. (*Id.* ¶ 12). Walker alleges that structural barriers prevent him and similarly situated wheelchair users from using the ramp similar to non-disabled inmates. (*Id.* ¶ 14). He also alleges he suffered physical injuries because of the ramp, including burning hands while attempting to break while moving down the ramp, because the ramp is long and does not have a landing area to rest as required by the ADA. (*Id.*).[1]

Walker seeks to represent a class of "all Cook County Jail detainees who have been assigned and currently use a wheelchair to traverse the Cermak ramp" under Rule 23(b)(2) and "all Cook County Jail detainees who have been assigned a wheelchair and used a wheelchair to traverse the Cermak ramp from May 5, 2018 to the date of entry of judgment," under Rule 23(b)(3). (Dkt. 40 at 3).

**II. Standard**

The four requirements of Rule 23(a), numerosity, commonality, typicality, and adequacy of representation, must be met for any proposed class. Fed. R. Civ. P. 23(a). The class then must satisfy the requirements of one of the three types of classes of Rule 23(b). "A party seeking class certification must affirmatively demonstrate his

---

[1] Walker also has an individual claim in this case regarding shower access in Cermak.

compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S.Ct. 2541 (2011) (emphasis in original).

"Plaintiffs bear the burden of showing that a proposed class satisfies the Rule 23 requirements, but…[i]t is sufficient if each disputed requirement has been proven by a preponderance of evidence." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012) (citation omitted). The Court must engage in a "rigorous analysis," resolving material factual disputes that bear on the certification requirements where necessary. *Wal-Mart Stores*, 564 U.S. at 350–51; *Bell v. PNC Bank, Nat. Ass'n,* 800 F.3d 360, 377 (7th Cir. 2015). But "[i]n conducting [the Rule 23] analysis, the court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *Messner*, 669 F.3d at 811; *see also Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66, 133 S.Ct. 1184 (2013); *Dancel v. Groupon, Inc.*, 949 F.3d 999, 1005 (7th Cir. 2019) (the analysis involves "a 'peek at the merits' that is 'limited to those aspects of the merits that affect the decisions essential under Rule 23.'") (citation omitted).

### III. Analysis

Defendants challenge Walker's class certification motion by arguing that (1) Walker has failed to cite any legal violation; (2) Walker cannot satisfy Rule 23(a)'s

requirements of numerosity, commonality, typicality, and adequate representation; and (3) Walker has not met the requirements of Rule 23(b)(2) or Rule 23(b)(3).[2]

### A. Alleged Violation

Defendants first argue that Walker "cannot succeed on the merits" and his proposed class is premised on a "non-existent legal violation." (Dkt. 60 at 4). They argue that the document Walker relies on "does not identify an applicable code which was violated." *Id.* On a motion for class certification, the Court can "'peek at the merits'" in a way that is "'limited to those aspects of the merits that affect the decisions essential under Rule 23.'" *Dancel*, 949 F.3d at 1005. However Defendants' contention that the document Walker relies on does not demonstrate a legal violation goes beyond this standard. *See Bennett v. Dart*, 953 F.3d 467, 469 (7th Cir. 2020) (Rule 23 provides a list of requirements that must be met for class certification "but surety of prevailing on the merits is not among them").

Walker alleges that the Cermak ramp is long and does not have a landing area to rest as required by the ADA. (SAC ¶14). He claims Defendants have failed to bring the ramp into compliance with the ADA.[3] In the ADA regulation cited by Defendants, Section 4.8.4 states, "Ramps shall have level landings at bottom and top of each ramp and each ramp run" and "[t]he landing length shall be a minimum of 60 in[ches] []

---

[2] Defendants do not challenge Walker's assertion that the class is ascertainable. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015) (Rule 23's "implicit requirement of 'ascertainability'" means that the class is "defined clearly" and based on "objective criteria").

[3] "It is well established that a failure to make 'reasonable modifications in policies, practices, or procedures' can constitute discrimination under Title II." *Lacy v. Cook Cty., Illinois*, 897 F.3d 847, 853 (7th Cir. 2018).

clear." (Dkt. 60-1 (Exh. 1) at 32). And attached to Walker's certification motion is a March 2018 Cook County report specifically stating that the Cermak ramp is "47' long without a landing," "the run exceeds code requirements," and listing five recommendations including to "create compliant ramp landing" and addressing the landing area and handrails on the ramp. Thus Defendants' argument about Walker's ability to succeed on the merits is not persuasive; whether Walker can *prove* Defendants violated the ADA and RHA is a question for another day.

### B. Rule 23(a) Requirements

#### i. Numerosity

Under Rule 23(a)(1), a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). A class can be certified "without determination of its size, so long as it's reasonable to believe it large enough to make joinder impracticable and thus justify a class action suit." *Orr v. Shicker*, 953 F.3d 490, 497 (7th Cir. 2020) (internal citation and quotations omitted). "While there is no magic number that applies to every case, a forty–member class is often regarded as sufficient to meet the numerosity requirement." *Id.* at 498 (internal citation and quotations omitted). On the other hand, plaintiffs may not rely on "conclusory allegations that joinder is impractical or on speculation as to the size of the class." *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989).

Here, Walker provides more than conclusory allegations or speculation about the class size. Walker relies on *Lacy v. Dart,* in which the district court certified, and the Seventh Circuit affirmed, a class of "[a]ll Cook County Jail detainees who have been

5

assigned and currently use a wheelchair." 897 F.3d at 855. Based on defendants' representation in that case that "approximately 60 detainees require the use of a wheelchair to assist in some way with movement throughout" the Jail, the court concluded that "a class consisting of wheelchair using detainees in the Jail is sufficiently numerous that joinder of all members is impracticable." *Lacy v. Dart*, 2015 WL 1995576, at *3 (N.D. Ill. Apr. 30, 2015). Thus the class certified in *Lacy* is almost identical to Walker's proposed class with the exception only that the class here is further defined as detainees who use a wheelchair "to traverse the Cermak ramp."

Defendants argue that Walker's reliance on *Lacy* is flawed first because Walker does not offer documentary evidence to support the numerosity requirement and second because he does not demonstrate why it would be reasonable to infer the number of wheelchair using detainees in the Jail in 2015 would be the same or similar to the number of wheelchair using detainees who use the Cermak ramp at the Jail in 2020. The Court finds Walker has met his burden to show by a preponderance of the evidence that the numerosity requirement is met because he relies on the Sheriff's own representation in *Lacy* about how many wheelchair using detainees there were in the Jail in 2015. The five-year difference between the *Lacy* certification and this case raises the possibility that the number of wheelchair-using detainees has changed—that number could have decreased *or* increased (or remained constant). In response to Walker's reliance on defendants' representation about the number in 2015, however, Defendants here do not offer any evidence to rebut that number or

6

provide a reason for the Court to believe it has decreased significantly (or at all).[4] Further, Walker recognizes that two locations at the Jail house wheelchair users, one of which is Cermak. But Defendants do not contest Walker's statement that a wheelchair-user housed at the other location still likely has navigated the Cermak ramp to attend a specialty medical clinic or the urgent care clinic. (Dkt. 40 at 7).[5] Therefore, Walker's reliance on defendants' prior representation about the number of wheelchair using detainees at the Jail makes it "reasonable to believe [the size] large enough to make joinder impracticable" in this case. *Orr*, 953 F.3d at 497.

## ii. Commonality

"To satisfy the commonality requirement...there needs to be one or more common questions of law or fact that are capable of class-wide resolution and are central to the claims' validity." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018), cert. denied, 139 S. Ct. 1465 (2019). A single common question is sufficient. *See Wal-Mart Stores*, 564 U.S. at 359. "Commonality requires the plaintiff to demonstrate that class members 'have suffered the same injury.'" *Id*. at 349-50 (citation omitted). The focus is "the capacity of a class-wide proceeding to generate

---

[4] Moreover in *Lacy*, the Seventh Circuit, in discussing the fact that approximately sixty detainees qualified for the class at the time of certification, explained that the "fact that the Department of Corrections keeps records of all wheelchair-assigned detainees also undermines the defendants' [challenge to ascertainability]…These records provide an extremely clear and objective criterion for ascertaining the class." 897 F.3d at n. 36.

[5] *See id*. at 1, citing testimony showing that Cermak "contains an urgent care clinic staffed 24/7 for the *jail's population* along with specialty clinics such as physical therapy" and there is "*one incline* inmates must navigate to enter Cermak." (emphasis added).

7

common *answers* apt to drive the resolution of the litigation." *Lacy*, 897 F.3d at 865 (quoting *Wal-Mart Stores*, 564 U.S. at 350, emphasis in original).

Defendants argue that Walker fails to allege class members suffered a common detriment or injury. Walker alleges that structural barriers prevent him and similarly situated wheelchair users from using the Cermak ramp similar to non-disabled inmates, and that Defendants know this ramp does not comply with ADA Structural Standards. (SAC ¶¶ 12, 14). He claims he suffered physical injuries because of the length of the ramp and the fact that it does not have a compliant landing area to rest. (*Id.* ¶14). Thus the common questions, Walker says, are: "Is the Cermak ramp required to comply with federal Structural Standards set by the ADA and Rehabilitation Act? And, if so, does the ramp comply with these standards?" (Dkt. 40 at 8). These are not superficial or abstract questions particularly in this case where a March 2018 Cook County report stated that the Cermak ramp's "run exceeds code requirements." (Dkt. 40-4 (Exh. 4)).

In *Lacy*, the court found commonality in the questions of "whether the ramps and holding cells at the six courthouses are compliant with the ADA and Rehabilitation Act's structural requirements", "whether the facilities have to comply with those requirements at all," and if the courthouses did not need to meet statutory requirements, "whether defendants' policies and actions sufficiently overcome structural barriers so as to satisfy the ADA and Rehabilitation Act." *Lacy*, 2015 WL 1995576, at *4. The questions here are similar.

8

Further, the Seventh Circuit in *Lacy* distinguished a case relied on by Defendants, *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481 (7th Cir. 2012). The Seventh Circuit found the commonality of the *Lacy* plaintiffs' alleged injuries stemming from defendants' failure to accommodate all wheelchair-using detainees was different from the *Jamie* class members' alleged injuries. *Lacy*, 897 F.3d at n. 38. The *Jamie* plaintiffs claimed "IDEA violations ranging from school district's failure to identify eligible students, to its failure to timely refer them for evaluation and its failure to hold properly constituted meetings regarding their individualized education programs." *Id*. Unlike in *Jamie*, Walker does not claim that Defendants engaged in a range of injurious conduct differing by plaintiff. Rather Walker claims Defendants engaged in the same conduct—failing to bring the Cermak ramp into compliance for the Jail's wheelchair bound detainees, resulting in the same lack of proper access for all of those detainees.[6]

Defendants also argue that Walker fails to prove or allege that all class members are disabled within the meaning of the ADA and RHA. Essentially the same argument was rejected by both the district court and Seventh Circuit in *Lacy*:

> The ADA and Rehabilitation Act protect persons who have a record of impairment or have been regarded as having an impairment. 42 U.S.C. § 12102(1). The 60 detainees using wheelchairs at the Jail are doing so

---

[6] Defendants argue that the fact that the district court is reconsidering class certification in *Bennett v. Dart* undermines Walker's assertion of commonality here. *Bennett* addresses the Jail's Division 10. Plaintiff in that case claims Division 10 lacks the grab bars and other fixtures needed for persons needing canes, crutches, or walkers to use showers and bathrooms safely. 953 F.3d 467, 468 (7th Cir. 2020). The Court is not persuaded, first because the district court in *Bennett* has not yet ruled on the motion to decertify. Second, the Seventh Circuit in that case made clear that plaintiff proposed "a class that will win *if* the Standards apply (and were violated, to detainees' detriment) and otherwise will lose. That's how class actions should proceed." *Id*. at 469 (emphasis added).

9

> because defendants provided them with wheelchairs. As such, these detainees are regarded as having an impairment, or at least have a record of impairment, negating the need to perform an individualized disability determination to identify class members.

2015 WL 1995576, at *2. And on appeal, the Seventh Circuit explained that under the ADA, a substantial limitation "includes 'mobility impairments requiring the use of a wheelchair.' Given that the assessment of these plaintiffs' impairments 'should be particularly simple and straightforward,' the individualized nature of their disabilities does not undermine commonality here." 897 F.3d at n. 37 (citations omitted).

Finally Defendants' reliance on a *post-trial* order in *Bowers v. Dart* is not convincing. After a jury returned a verdict there in Dart's favor, the court concluded that a jury could reasonably find that Bowers, the *sole plaintiff*, was not disabled within the meaning of the ADA. *Bowers v. Dart, et al.*, No. 16-cv-2483, Dkt. 232. There was factual dispute at trial, and "not over whether Bowers used a wheelchair—it was over whether Bowers was lying about needing one." *Id*. Therefore the post-trial ruling in *Bowers* has no impact on the pertinent question here—whether Walker has met his burden to show common questions of law or fact are capable of class-wide resolution. *See Messner*, 669 F.3d at 811 (class certification proceedings are not "a dress rehearsal for the trial on the merits."). For the reasons discussed Walker has met that burden.

### iii. Typicality

"Generally, a class representative's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members

10

and her claims are based on the same legal theory. Although the typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members, the requirement primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *McFields v. Dart*, 982 F.3d 511, 517–18 (7th Cir. 2020) (cleaned up); *see also Lacy*, 897 F.3d at 866. The requirements for commonality and typicality "tend to merge." *Wal-Mart Stores*, 564 U.S. at 349 n.5.

Defendants again argue that Walker does not identify an injury faced by the class members. For similar reasons related to commonality, Walker has met his burden to show his claim arises from the same course of conduct as other class members—Defendants' alleged failure to bring the Cermak ramp into compliance with the ADA and RHA. The reasoning of the Seventh Circuit in *Lacy* upholding the typicality finding there supports this result as well. 897 F.3d at 866 ("the named plaintiffs [wheelchair-using detainees] alleged the same injurious conduct [under the ADA and RHA] and requested the same modifications as the class at-large. We see no reason to question the typicality of their claims").

### iv. Plaintiff as representative

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A representative must demonstrate that he "will fairly and adequately protect the interests of the class before [the court] may allow a case to proceed." *Stampley v. Altom Transp., Inc.*, 958

11

F.3d 580, 585 (7th Cir. 2020) (internal quotation marks omitted). This assessment allows for "flexibility" and "the exercise of the trial court's common sense and good judgment." *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U.A.*, 657 F.2d 890, 896 (7th Cir. 1981).

Defendants argue that Walker alleges that only he suffered a ramp-related injury and so there may be unique defenses related to individual class members.[7] Defendants do not explain what these unique defenses may be. A Rule 23(b)(2) class's collective injury in this case will be resolved by an injunction requiring the Cermak ramp to be brought into compliance. No individualized assessment of injuries will be needed. The Court sees no reason to question the adequacy of Walker as representative.

### C. Rule 23(b)(2)

Having determined that Walker has met his burden to show the Rule 23(a) requirements are met, the Court turns to Rule 23(b). Under Rule 23(b)(2), plaintiffs must establish that the challenged conduct "appl[ies] generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Walker alleges that Defendants act on grounds that apply generally to the class by failing to comply with the Structural Standards required by the ADA and RHA as it relates to the Cermak ramp. Defendants maintain that a Rule 23(b)(2) class is inappropriate because plaintiffs would have "varied abilities and experiences" and

---

[7] Defendants do not challenge the adequacy of class counsel in this case.

12

"any injuries would vary from person to person." (Dkt. 60 at 11). However all proposed class members are wheelchair bound, and any variation in ability and experience beyond that does not undermine the conclusion that injunctive relief would address the complaint of all class members in this case. *See Lacy*, 2015 WL 1995576, at *6 ("a single injunction in the instant case would provide relief to each member of the class"); *see also Holmes v. Godinez*, 311 F.R.D. 177, 223 (N.D. Ill. 2015) (in Title II ADA case, finding request for declaration that IDOC's policies and practices regarding accommodations for hearing impaired inmates violate federal law to be sufficient to certify the class under Rule 23(b)(2)).

The proposed class members here have a common injury—inability to safely use the Cermak ramp—that would be addressed by the same remedy—bringing the Cermak ramp into compliance. And because the Court declines to certify a Rule 23(b)(3) class for the reasons explained below, Defendants' argument about individualized damages for class members is moot.

### D. Rule 23(b)(3)

Under Rule 23(b)(3), a plaintiff must show that questions of law or fact common to the class members predominate over individualized issues and that a class action is the superior method of adjudicating the case. Fed. R. Civ. P. 23(b)(3). Walker does not meet his burden to demonstrate a Rule 23(b)(3) class is appropriate.

Walker acknowledges the predominance requirement is "far more demanding" than Rule 23(a)'s commonality or typicality requirements. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). Predominance requires that the "legal or

13

factual questions that qualify each class member's case as a genuine controversy" are "sufficiently cohesive to warrant adjudication by representation." *Messner*, 669 F.3d at 814. "Mere *assertion* by class counsel that common issues predominate is not enough." *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014) (emphasis in original).

As Defendants argue, Walker does not cite any evidence to support his contention that common questions predominate over individualizes ones. Instead Walker relies solely on *Bennett v. Dart*, 2020 WL 1812376 (N.D. Ill. Apr. 9, 2020). But *Bennett* involved a different class and a proposed Rule 23(b)(3) class only. There the court certified a class of "[a]ll inmates housed in Division 10 at the Cook County Department of Corrections from June 27, 2016 to the date of entry of judgment, who were prescribed either a walker, crutch, or cane by the medical staff and were denied an accommodation for toileting and showering." *Id.* at *1. Given the differences between *Bennett* and this case, Walker's sole reliance on *Bennett* does not permit the court to weigh the common issues against the individualized issues in this case.[8] The Court therefore cannot determine Walker has met the "far more demanding" predominance standard.

As for superiority, Rule 23(b)(3) also allows class certification only where "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Again, instead of offering evidence or

---

[8] As noted earlier the *Bennett* court has taken under consideration defendant's motion to decertify.

support for his claim that the superiority element is met, Walker relies solely on *Bennett*. That does not permit the Court to engage in the "rigorous analysis" required. In light of the well-settled law that Rule 23 is more than "a mere pleading standard" (*Parko*, 739 F.3d at 1085, citation omitted), the Court cannot conclude based solely on Walker's unsupported assertions that both the predominance and superiority elements are met in order to allow a Rule 23(b)(3) class to proceed.

### IV. Conclusion

For the stated reasons, Plaintiff Walker's motion to certify [39] is granted in part and denied in part. The motion to certify a Rule 23(b)(2) class is granted; the request to certify a Rule 23(b)(3) class is denied.

The Court certifies the following class under Rule 23(b)(2): "all Cook County Jail detainees who have been assigned and currently use a wheelchair to traverse the Cermak ramp." The Court appoints the following class representative: Cornelius Walker, and the following attorneys as class counsel: Thomas Gerard Morrissey and Patrick William Morrissey.

E N T E R:

Dated: March 3, 2021

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge