**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CORNELIUS WALKER, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| -*vs*- | ) | Case No. 20-cv-261 |
| | ) | |
| THOMAS DART, Sheriff of Cook County, | ) | Judge Mary M. Rowland |
| and COOK COUNTY, ILLINOIS, | ) | Magistrate Jeannice W. Appenteng |
| | ) | |
| *Defendants.* | ) | |

### DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS

Defendants, THOMAS DART, Sheriff of Cook County, and COOK COUNTY, ILLINOIS, by their attorney, KIMBERLY M. FOXX, State's Attorney of Cook County, through her Special Assistant State's Attorneys, JOHNSON & BELL, LTD., submit the following response to Plaintiff's statement of facts:

1. On June 22, 2023, the Court certified the following issue under Rule 23(c)(4): "whether the Cermak ramp complied with the Structural Standards required by the ADA and RHA between May 5, 2018 and the date of entry of judgment." Dkt. 159 at 5.

**RESPONSE:** Undisputed that this is a portion of the Court's order.

2. The class alleges the defendants violate their rights under Section 202 of the Americans with Disabilities Act, 42 U.S.C. § 12132 and under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) because defendants "Sheriff Thomas Dart and Cook County have not repaired a non-compliant ramp at the jail." Dkt. 159, Order at 1.

**RESPONSE:** Defendants dispute they violated the rights of Plaintiff or any class member. However, undisputed that this is Plaintiff's allegation.

3.      Defendant Sheriff of Cook County is sued in his official capacity. Dkt. 55, Sheriff's Answer to Second Amended Complaint ¶ 3.

**RESPONSE:** Undisputed.

4.      Defendant Cook County, in collaboration with the Sheriff's Office, is responsible for accommodating the needs of disabled prisoners remanded to the Sheriff of Cook County and is a necessary party in this action. Dkt. 55, Sheriff's Answer to Second Amended Complaint ¶ 4.

**RESPONSE:** Undisputed.

5.      "The Cermak Health Services Facility (PS.011.005) is located at 2800 S. California, Chicago and is a 3-story tall with penthouse 161,590SF building and was originally constructed in 1998." Exhibit 1, Cook County Request for Qualifications at 9.

**RESPONSE:** Defendants object that the information in this paragraph lacks foundation. Notwithstanding and without waiving said objection, undisputed for purposes of summary judgment that this information is contained in the cited exhibit.

6.      Construction for the Cermak Health Services Facility began in 1996 and appears to have been completed in 1998. Exhibit 2, Davis (1/24/2022) as Cook County Rule 30(b)(6) designee 298:6-299:7; Exhibit 17, Cook County Amended Response to Request to Admit ¶ 5 (admitting construction commenced after July 26, 1992).

**RESPONSE:** Defendants object that the topic in the Rule 30(b)(6) notice was "Identify, by month and year, when construction commenced on the Cermak Health Facility ("Cermak") located at 2800 S. California Ave, Chicago, Illinois" and did not include when construction of Cermak was completed. Notwithstanding and without waiving said objection, undisputed that construction of Cermak commenced after July 26, 1992.

7.      There is a "pedestrian/material access tunnel serving the facility [the Cermak Health Services Facility] at the basement level." Exhibit 1, Cook County Request for Qualifications at 9.

**RESPONSE:** Defendants object that the information in this paragraph lacks foundation. Notwithstanding and without waiving said objection, undisputed for purposes of summary judgment that this information is contained in the cited exhibit.

8.      The Cermak ramp "connects the Cermak building to the tunnel" and is used by civilian and security employees to enter Cermak, to transport inmates, and to transport equipment. Exhibit 3, Rivero-Canchola Dep 48:8-21.

**RESPONSE:** Undisputed for purposes of summary judgment that this is the deposition testimony of Sabrina Rivero-Canchola.

9.      Ms. Sabrina Rivero-Canchola, the Sheriff's ADA Compliance Officer, uses the Cermak ramp "almost on a daily basis" because she "frequently use[s] the tunnel entrances to all the divisions." Exhibit 3, Rivero Canchola Dep 49:11-17, 109:9-10.

**RESPONSE:** Undisputed for purposes of summary judgment that this is the deposition testimony of Sabrina Rivero-Canchola.

10.     Ms. Rivero-Canchola said detainees escorted through the Jail's tunnel would enter Cermak using the ramp. Exhibit 3, Rivero-Canchola Dep 50:20-51:2.

**RESPONSE:** Undisputed for purposes of summary judgment that this is the deposition testimony of Sabrina Rivero-Canchola.

11.     There are "a variety of reasons" why a detainee would be brought to Cermak including "[t]o obtain medical or psychiatric attention, if they have a clinic appointment there or

if their housing has been upgraded and they need to be housed there." Exhibit 3, Rivero-Canchola Dep 51:6-14.

**RESPONSE:** Undisputed for purposes of summary judgment that this is the deposition testimony of Sabrina Rivero-Canchola.

12.     An inmate housed on the third floor of Cermak would be transported to the Leighton Courthouse "through the tunnel" meaning he (or she) would have to traverse the Cermak ramp. Exhibit 3, Rivero-Canchola Dep 56:9-18.

**RESPONSE:** Undisputed for purposes of summary judgment that this is the deposition testimony of Sabrina Rivero-Canchola.

13.     Eric Davis has been the Deputy Director of the Cook County Department of Capital Planning and Policy since April 2017. Exhibit 5, Davis (1/19/2022) Dep 10:3-11.

**RESPONSE:** Undisputed.

14.     Eric Davis has been a licensed architect since 1989. Exhibit 2, Davis (1/24/2022) Dep 237:15-18.

**RESPONSE:** Undisputed.

15.     Eric Davis testified the Cermak ramp is used to transport detainees to the infirmary. Exhibit 2, Davis (1/24/2022) Dep 290:8-14.

**RESPONSE:** Undisputed for purposes of summary judgment that this is the deposition testimony of Eric Davis.

16.     **[a]** STV is a program manager for Cook County's public safety portfolio. Exhibit 6, Stoner (9/8/2021) Dep 14:15-20. **[b]** The Cook County Department of Corrections (CCDOC) is part of the public safety portfolio. Exhibit 7, Davis (11/30/2021) Dep 5:1-11.

**RESPONSE: [a]** Defendants object that the cited deposition testimony lacks foundation and is based on speculation. **[b]** Defendants object that the cited deposition testimony does not support this statement of fact.

17.    As a program manager for the public safety portfolio, STV assists Cook County in implementing their capital improvement program. Exhibit 6, Stoner (9/8/2021) Dep 15:4-19.

**RESPONSE:** Defendants object that the cited deposition testimony lacks foundation, is based on speculation, and does not support this statement of fact.

18.    **[a]** Ellen Stoner is a licensed architect and is the principal of Altus Works. Exhibit 6, Stoner (9/8/2021) Dep 5:22-6:2,16:2-5. **[b]** In about 2017, STV hired Altus Works as an "on-call consultant for accessibility evaluations." Exhibit 6, Stoner (9/8/2021) Dep 15:17-16:10, 28:10-14.

**RESPONSE: [a]** Undisputed for purposes of summary judgment that this is the deposition testimony of Ellen Stoner. **[b]** Defendants object that the cited deposition testimony is based on speculation.

19.    "Atlas Works was tasked by the STV/Heery joint venture to review accessibility of various locations, including the lower level ramp in the Cermak Health Services Facility, including but not limited to those requirements from the 2010 ADA Standards that may apply to a building constructed in the late 1990s." Exhibit 9, Cook County Answer to Second Set of Interrogatories ¶ 3.

**RESPONSE:** Disputed that "Atlas Works" was tasked by STV/Heery but otherwise undisputed.

20.     In March 2018 Ellen Stoner conducted a walkthrough of Cermak. Exhibit 6, Stoner (9/8/2021) Dep 102:16-21; Exhibit 10, Cook County Answer to Plaintiff's First Set of Interrogatories ¶ 2.

**RESPONSE:** Undisputed.

21.     Ms. Stoner made recommendations to bring the Cermak ramp "into compliance." Exhibit 6, Stoner (9/8/2021) Dep 138:12-20.

**RESPONSE:** Undisputed for purposes of summary judgment that this is the deposition testimony of Ellen Stoner.

22.     Ms. Stoner wrote the following information regarding the Cermak ramp:

Existing ramp is 47' long without a landing. Slope of the ramp is within 1:12 maximum slope requirements, however the run exceeds code requirements.
Recommendations:
1. Create compliant landing 30' from top of ramp
2. Repour the remaining 17' ramp in 2 sections with another landing area at the change in ramp direction.
3. Raise door to Medical Records room B020. Extend landing into room and provide 3' wide ramp and 44" wide stair
4. Provide hand rails at both sides of ramps, continuous at landing where no door exists.
5. Provide handrails at both sides of stairs in B020

Exhibit 10, Cook County Answer to Plaintiff's First Set of Interrogatories ¶ 6; Exhibit 4 at 2; Exhibit 5, Davis (1/19/2022) Dep 93:2-13.

**RESPONSE:** Undisputed that Ellen Stoner wrote this information regarding the Cermak ramp.

23.     Ellen Stoner created the drawing of the Cermak ramp attached as Exhibit 4 and also referenced in Eric Davis's deposition as Exhibit 4. Exhibit 5, Davis (1/19/2022) Dep 93:2-13.

**RESPONSE:** Undisputed for purposes of summary judgment that this is the deposition testimony of Eric Davis.

24.     Ms. Stoner found the absence of handrails caused the ramp to be noncompliant with the 2010 ADA code. Exhibit 6, Stoner (9/8/2021) Dep 138:22-139:6.

**RESPONSE:** Disputed. Ellen Stoner testified, "I don't recall the specifics of why [the handrails] were deficient." (*Id.* at 139:8–12.)

25.     Ramps in public buildings must comply with certain federal regulations enacted under the ADA known as the Americans with Disabilities Act Accessibility Guidelines for Buildings and Facilities (ADAAG), 28 C.R.R. Pt. 36, App. A, or the Uniform Federal Accessibility Standards (UFAS), 41 C.F.R. Pt. 101-19.6, App. A.

**RESPONSE:** Defendants object that this statement lacks sufficient specificity to either dispute or not dispute. Notwithstanding and without waiving said objection, the federal regulations speak for themselves.

26.     To be "readily accessible," any part of a newly constructed or altered facility must be constructed in conformity with the ADAAG, 28 C.F.R. Pt. 36, App. A, or with UFAS, 41 C.F.R. Pt. 101-19.6, App. A. *Daubert v. Lindsay Unified Sch. Dist.*, 760 F.3d 982, 986 (9th Cir. 2014); 28 C.F.R. § 35.151(c)(1)-(3).

**RESPONSE:** Defendants object that this statement lacks sufficient specificity to either dispute or not dispute. Notwithstanding and without waiving said objection, the federal regulations speak for themselves.

27.     Under Section 4.8.5 of the ADA:

If a ramp run has a rise greater than 6 in (150 mm) or a horizontal projection greater than 72 in (1830 mm), then it shall have handrails on both sides. Handrails are not required on curb ramps or *adjacent to seating in assembly areas*. Handrails shall comply with 4.26 and shall have the following features:

>    (1)   Handrails shall be provided along both sides of the ramp segments. The inside handrail on switchback or dogleg ramps shall always be continuous.

(2)    If handrails are not continuous, they shall extend at least 12 in (305 mm) beyond the top and bottom of the ramp segment and shall be parallel with the floor or ground surface (see Fig. 17).

(3)    The clear space between the handrail and the wall shall be 1 –1/2 in (38 mm).

(4)    Gripping surfaces shall be continuous.

(5)    Top of handrail gripping surfaces shall be mounted between 34 in and 38 in (865 mm and 965 mm) above ramp surfaces.

(6)    Ends of handrails shall be either rounded or returned smoothly to floor, wall, or post.

(7)    Handrails shall not rotate within their fittings.

Exhibit 8, Page 32, 1991 ADA Standards for Accessible Design, Section 4.8.5.

**RESPONSE:** Undisputed that this is a portion of the 1991 ADA Standards for Accessible Design.

28.    Under Section 4.8.5 of UFAS:

If a ramp run has a rise greater than 6 in (250 mm) or a horizontal projection greater than 72 in (1830 mm), then it shall have handrails on both sides. Handrails are not required on curb ramps. Handrails shall comply with 4.26 and shall have the following features:

(1)    Handrails shall be provided along both sides of the ramp segments. The inside handrail on switchback or dogleg ramps shall always be continuous.

(2)    If handrails are not continuous, they shall extend at least 12 in (305 mm) beyond the top and bottom of the ramp segment and shall be parallel with the floor or ground surface.

(3)    The clear space between the handrail and the wall shall be 1 –1/2 in (38 mm).

(4)    Gripping surfaces shall be continuous.

(5)    Top of handrail gripping surfaces shall be mounted between 30 in and 34 in (760 mm and 865 mm) above ramp surfaces.

(6)    Ends of handrails shall be either rounded or returned smoothly to floor, wall, or post.

(7)    Handrails shall not rotate within their fittings.

Exhibit 18, Page 26, UFAS Section 4.8.5.

**RESPONSE:** Undisputed that this is a portion of the Uniform Federal Accessibility Standards.

29.    The rise of the Cermak ramp is greater than 6 inches. Exhibit 5, Davis (1/19/2022) Dep 102:20-22.

**RESPONSE:** Undisputed.

30.     The horizontal projection of the Cermak ramp is approximately 43 feet, 11 inches. Exhibit 5, Davis (1/19/2022) Dep 22:1-24:11; Exhibit 17,Cook County's Amended Response to Request to Admit ¶¶ 16, 18 (length of ramp is more than 43 feet); Exhibit 10, Cook County's Answer to Plaintiff's First Set of Interrogatories ¶ 5 (the horizontal projection or run of the ramp is 43 feet, 11 inches, however "the answer to this question depends on how the ramp is measured").

**RESPONSE:** Undisputed.

31.     The 1991 ADA Standards, attached as Exhibit 8 and also referenced in Eric Davis's deposition as Exhibit 8, "would have been applicable when [Cermak] was permitted for construction." Exhibit 5, Davis (1/19/2022) Dep 88:3-89:13.

**RESPONSE:** Defendants object that the cited deposition testimony lacks foundation. Eric Davis has not been disclosed or qualified as an expert on the Americans with Disabilities Act (ADA), the Rehabilitation Act, the ADA Standards for Accessible Design, or the Uniform Federal Accessibility Standards and does not have the necessary foundation to opine on the federal statutes and regulations. Notwithstanding and without waiving said objection, the federal statutes and regulations speak for themselves.

32.     Eric Davis said the purpose of handrails under the ADA code is to "allow someone to steady themselves, whether they're walking or in a wheelchair, to provide stability when they're walking or in a wheelchair." Exhibit 5, Davis (1/19/2022) Dep 104:2-8.

**RESPONSE:** Defendants object that the cited deposition testimony lacks foundation. Eric Davis has not been disclosed or qualified as an expert on the Americans with Disabilities Act (ADA), the Rehabilitation Act, the ADA Standards for Accessible Design, or the Uniform Federal Accessibility Standards and does not have the necessary foundation to opine on the purpose of

handrails under the federal statutes and regulations. This statement is also disputed. Under the 1991 ADA Standards for Accessible Design and the Uniform Federal Accessibility Standards, handrails shall comply with Section 4.26. (1991 ADA Standards for Accessible Design, Section 4.8.5, Pl.'s Ex. 8, at 32, ECF No. 166-8; Uniform Federal Accessibility Standards, Section 4.8.5, Pl.'s Ex. 18, at 25, ECF No. 166-15.) Under Appendix A4.26.1 of the 1991 ADA Standards for Accessible Design and the Uniform Federal Accessibility Standards, the purpose of handrails is "to maintain balance and prevent serious falls." (Pl.'s Ex. 8, at 87; Pl.'s Ex. 18, at 66.) "Many people brace their forearms between supports and walls to give them more leverage and stability in maintaining balance or for lifting." (Pl.'s Ex. 8, at 87; Pl.'s Ex. 18, at 66.)

33.  According to Eric Davis, the 1991 ADA Standards require handrails for ramps. Exhibit 5, Davis (1/19/2022) Dep 51:13-52:2.

**RESPONSE:** Defendants object that the cited deposition testimony lacks foundation. Eric Davis has not been disclosed or qualified as an expert on the Americans with Disabilities Act (ADA), the Rehabilitation Act, the ADA Standards for Accessible Design, or the Uniform Federal Accessibility Standards and does not have the necessary foundation to opine on the federal statutes and regulations. Defendants also object that this statement lacks sufficient specificity to either dispute or not dispute. Notwithstanding and without waiving said objection, the federal regulations speak for themselves.

34.  Eric Davis testified the Cermak ramp did not have handrails that comply with either the 1991 or 2010 ADA standards. Exhibit 5, Davis (1/19/2022) Dep 52:3-7.

**RESPONSE:** Defendants object that the cited deposition testimony lacks foundation. Eric Davis has not been disclosed or qualified as an expert on the Americans with Disabilities Act (ADA), the Rehabilitation Act, the ADA Standards for Accessible Design, or the Uniform Federal

Accessibility Standards and does not have the necessary foundation to opine on the federal statutes and regulations. Defendants also object that this statement lacks sufficient specificity to either dispute or not dispute. Defendants also object that the cited deposition testimony does not support this statement of fact. Moreover, as set forth in Defendants' response brief, neither Plaintiff nor any class member, who are all persons who used a wheelchair to traverse the Cermak ramp, have standing to bring a claim against Defendants for an alleged lack of handrails on the Cermak ramp. As such, Defendants object that the information in this paragraph is immaterial and irrelevant.

35. Eric Davis testified "handrails would need to be provided" to comply with the ADA structural standards. Exhibit 5, Davis (1/19/2022) Dep 52:16-22.

**RESPONSE:** Defendants object that the cited deposition testimony lacks foundation. Eric Davis has not been disclosed or qualified as an expert on the Americans with Disabilities Act (ADA), the Rehabilitation Act, the ADA Standards for Accessible Design, or the Uniform Federal Accessibility Standards and does not have the necessary foundation to opine on the federal statutes and regulations. Defendants also object that this statement lacks sufficient specificity to either dispute or not dispute. Moreover, as set forth in Defendants' response brief, neither Plaintiff nor any class member, who are all persons who used a wheelchair to traverse the Cermak ramp, have standing to bring a claim against Defendants for an alleged lack of handrails on the Cermak ramp. As such, Defendants object that the information in this paragraph is immaterial and irrelevant.

36. Eric Davis said that the Cermak ramp "appears that instead of a handrail that there are hospital-style bumpers at that - - at approximately the same height off the floor." Exhibit 5, Davis (1/19/2022) Dep 106:7-14.

**RESPONSE:** Undisputed for purposes of summary judgment that this is the deposition testimony of Eric Davis.

37.     Section 4.8.5 of the 1991 ADA Standards require continuous handrails (from the bottom to the top) on both sides of the ramp. Exhibit 5, Davis (1/19/2022) Dep 103:17-104:1.

**RESPONSE:** Defendants object that the cited deposition testimony lacks foundation. Eric Davis has not been disclosed or qualified as an expert on the Americans with Disabilities Act (ADA), the Rehabilitation Act, the ADA Standards for Accessible Design, or the Uniform Federal Accessibility Standards and does not have the necessary foundation to opine on the federal statutes and regulations. Defendants also object that this statement lacks sufficient specificity to either dispute or not dispute. Notwithstanding and without waiving said objection, the federal regulations speak for themselves.

38.     During a hearing on March 4, 2022, counsel for the defendants made the following statement:

> The other issue with the ramp is the railings, which we're all on board with. We know that railings have to be added to each side of the ramp.

> So it's really not a question of whether it will be done. It's just a question of what will be done and when.

Dkt. 96, Transcript from 3/4/2022 Hearing at 3:20-4:3.

**RESPONSE:** Defendants object that this statement is neither evidence nor admissible. A district court "may consider only admissible evidence in assessing a motion for summary judgment." *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). "[I]t is universally known that statements of attorneys are not evidence." *Campania Management Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 853 (7th Cir. 2002); *see also R-Boc Representatives, Inc. v. Minemyer*, 233 F. Supp. 3d 647, 666 n.29 (N.D. Ill. 2017) (pointing out that "statements of lawyers are not evidence and do not count"). Notwithstanding and without waiving said objection, undisputed that defense counsel made this statement at the March 4, 2022, hearing.

39.     According to Eric Davis, the only other form of technology available to assist a person up or down the Cermak ramp that comes to mind other than a handrail is to "have a motorized lift." Exhibit 2, Davis (1/24/2022) Dep 289:6-12.

**RESPONSE:** Defendants object that the cited deposition testimony lacks foundation. Eric Davis has not been disclosed or qualified as an expert on accommodations under the Americans with Disabilities Act (ADA), the Rehabilitation Act, the ADA Standards for Accessible Design, or the Uniform Federal Accessibility Standards and does not have the necessary foundation to opine on available accommodations. Moreover, as set forth in Defendants' response brief, neither Plaintiff nor any class member, who are all persons who used a wheelchair to traverse the Cermak ramp, have standing to bring a claim against Defendants for an alleged lack of handrails on the Cermak ramp. Further, Plaintiff has not set forth any information regarding a requirement that a "motorized lift" be provided, nor has Plaintiff sought a "motorized lift" at any point in this litigation. As such, Defendants object that the information in this paragraph is immaterial and irrelevant.

40.     Increasing accessibility in Cook County facilities is an important issue for the Board of Commissioners and "a policy-level decision from the president as far as her goals of providing accessibility and equal access across the County. Exhibit 2, Davis (1/24/2022) Dep 295:2-22; Exhibit 7, Davis (11/30/2021) Dep 85:5-17.

**RESPONSE:** Defendants object that the cited deposition testimony lacks foundation. Defendants also object because "policy goals" regarding accessibility say nothing about compliance with applicable aspects of the Americans with Disabilities Act (ADA), the Rehabilitation Act, the ADA Standards for Accessible Design, or the Uniform Federal

Accessibility Standards. Notwithstanding and without waiving said objection, undisputed for purposes of summary judgment that this is the deposition testimony of Eric Davis.

41. **[a]** Exhibit 200 is a video that depicts the Cermak ramp. Exhibit 6, Stoner (9/8/2021) Dep 73:20-74:11. **[b]** This video depicts inmates traverse the ramp on June 29, 2021 from 10:54 am to 10:57 am and has been filed as a digital exhibit assigned document number 107.

**RESPONSE: [a]** Defendants object that the cited deposition testimony lacks foundation and is based on speculation. **[b]** Defendants object that the cited video exhibit does not support the statement in this paragraph that the inmate is traversing the Cermak ramp. Notwithstanding and without waiving said objection, undisputed that the video depicts an inmate traversing a ramp. Stating further, the video does not depict Plaintiff traversing the ramp, nor does it depict the inmate using the handrails that are on each side of the ramp or having difficulty or suffering an injury traversing the ramp because of the alleged non-compliant handrails. The video shows the inmate did not have any trouble with maintaining balance as he sat in the wheelchair or was at any risk of falling out of the wheelchair. The video also shows the inmate did not need the handrail to steady himself while traversing the ramp. The video depicts the inmate slowly and successfully moving down the ramp.

42. Exhibit 201 is video showing an inmate traverse the ramp in a wheelchair on May 26, 2021 at about 11:50 am. This video has been filed as a digital exhibit assigned document number 107.

**RESPONSE:** Defendants object that the cited video exhibit does not support the apparent assertion in this paragraph that the inmate is traversing the Cermak ramp. Notwithstanding and without waiving said objection, undisputed that the video depicts an inmate traversing a ramp. Stating further, the video does not depict Plaintiff traversing the ramp, nor does it depict the inmate

using the handrails that are on each side of the ramp or having difficulty or suffering an injury traversing the ramp because of the alleged non-compliant handrails. The video shows the inmate did not have any trouble with maintaining balance as he sat in the wheelchair or was at any risk of falling out of the wheelchair. The video also shows the inmate did not need the handrail to steady himself while traversing the ramp. The video depicts the inmate being assisted down the ramp by an officer.

43.     Exhibit 202 is video showing inmates traverse the Cermak ramp on June 14, 2021 from 11:08 am to 11:09 am. Exhibit 202 was filed electronically as a digital exhibit assigned document number 107.

**RESPONSE:** Defendants object that the cited video exhibit does not support the statement in this paragraph that the inmate is traversing the Cermak ramp. Notwithstanding and without waiving said objection, undisputed that the video depicts an inmate traversing a ramp. Stating further, the video does not depict Plaintiff traversing the ramp, nor does it depict the inmate using the handrails that are on each side of the ramp or having difficulty or suffering an injury traversing the ramp because of the alleged non-compliant handrails. The video shows the inmate did not have any trouble with maintaining balance as he sat in the wheelchair or was at any risk of falling out of the wheelchair. The video also shows the inmate did not need the handrail to steady himself while traversing the ramp. The video depicts a staff member converse with the inmate and an officer escort the inmate up the ramp who was available to provide assistance to the inmate.

44.     Exhibit 203 is video showing an inmate move down the Cermak ramp in a wheelchair on June 14, 2021 at about 11:50 am. This electronic exhibit has been filed as document number 107.

**RESPONSE:** Defendants object that the cited video exhibit does not support the statement in this paragraph that the inmate is traversing the Cermak ramp. Notwithstanding and without waiving said objection, undisputed that the video depicts an inmate traversing a ramp. Stating further, the video does not depict Plaintiff traversing the ramp, nor does it depict the inmate using the handrails that are on each side of the ramp or having difficulty or suffering an injury traversing the ramp because of the alleged non-compliant handrails. The video shows the inmate did not have any trouble with maintaining balance as he sat in the wheelchair or was at any risk of falling out of the wheelchair. The video also shows the inmate did not need the handrail to steady himself while traversing the ramp. The video depicts the inmate slowly and successfully moving down the ramp while being escorted by an officer.

45.      Gary B. Keclik is an architect retained by class counsel and inspected the Cermak ramp on May 11, 2021. Exhibit 16, Keclik Decl. dated 4/11/2022 ¶¶ 1-2.

**RESPONSE:** Undisputed for purposes of summary judgment that this is the sworn testimony of Gary Keclik.

46.      During the inspection, Mr. Keclik observed inmates traverse the Cermak ramp. Exhibit 16, Keclik Decl. dated 4/11/2022 ¶ 3.

**RESPONSE:** Undisputed for purposes of summary judgment that this is the sworn testimony of Gary Keclik. Stating further, Mr. Keclik did not see Plaintiff traverse the ramp, nor did he see inmates have difficulty or suffer an injury while traversing the ramp.

47.      Mr. Keclik opined that one reason the Cermak ramp is not compliant with the ADA structural standards is because it did not have handrails. Exhibit 16, Keclik Decl. dated 4/11/2022 ¶¶ 4-8.

**RESPONSE:** As set forth in Defendants' response brief, neither Plaintiff nor any class member, who are all persons who used a wheelchair to traverse the Cermak ramp, have standing to bring a claim against Defendants for an alleged lack of handrails on the Cermak ramp. As such, Defendants object that the information in this paragraph is immaterial and irrelevant. Notwithstanding and without waiving said objection, disputed. The Cermak ramp had and presently has handrails. On July 5, 2022, a work order was entered to "[r]emove existing handrails in ramp leading from tunnel to Cermak and replace with ADA compliant handrails." (Cook County – Reactive Work Order, Pl.'s Ex. 20, at 1, ECF No. 166-17.) The project was completed on January 16, 2023. (*Id.* at 2.) Defendants are also not waiving any right to challenge Mr. Keclik's testimony on *Daubert* or any other grounds at a later date.

48.    The parties entered an agreed order requiring Cook County to install "hand-railings on the Cermak Ramp on or before December 31, 2022" and that the "railings must comply with the Americans with Disabilities Act (ADA)." Dkt. 120, Order.

**RESPONSE:** As set forth in Defendants' response brief, neither Plaintiff nor any class member, who are all persons who used a wheelchair to traverse the Cermak ramp, have standing to bring a claim against Defendants for an alleged lack of handrails on the Cermak ramp. As such, Defendants object that the information in this paragraph is immaterial and irrelevant. Notwithstanding and without waiving said objection, undisputed for purposes of summary judgment that the quoted language is contained in the cited order.

49.    Timothy Tyrrell, the general manager for the department of facilities management for Cook County, was produced for a deposition on May 9, 2023. Exhibit 19, Tyrrell Dep 5:12-23, 11:5-18.

**RESPONSE:** Undisputed.

50.     Mr. Tyrrell testified that ironworkers "installed some handrails" on the Cermak ramp in the fall of 2022. Exhibit 19, Tyrrell Dep 70:6-12.

**RESPONSE:** As set forth in Defendants' response brief, neither Plaintiff nor any class member, who are all persons who used a wheelchair to traverse the Cermak ramp, have standing to bring a claim against Defendants for an alleged lack of handrails on the Cermak ramp. As such, Defendants object that the information in this paragraph is immaterial and irrelevant. Notwithstanding and without waiving said objection, undisputed for purposes of summary judgment that this is the deposition testimony of Timothy Tyrrell.

51.     Mr. Tyrrell said the project to install hand railings on each side of the Cermak ramp was completed on January 16, 2023. Exhibit 19, Tyrrell Dep 72:22-73:16. The project was completed at this time "because of delivery and shipment issues." Exhibit 19, Tyrrell Dep 71:6-22.

**RESPONSE:** As set forth in Defendants' response brief, neither Plaintiff nor any class member, who are all persons who used a wheelchair to traverse the Cermak ramp, have standing to bring a claim against Defendants for an alleged lack of handrails on the Cermak ramp. As such, Defendants object that the information in this paragraph is immaterial and irrelevant. Notwithstanding and without waiving said objection, undisputed for purposes of summary judgment that this is the deposition testimony of Timothy Tyrrell.

52.     Mr. Tyrrell said there are work orders regarding the installation of handrails. Exhibit 19, Tyrrell Dep 73:4-16.

**RESPONSE:** As set forth in Defendants' response brief, neither Plaintiff nor any class member, who are all persons who used a wheelchair to traverse the Cermak ramp, have standing to bring a claim against Defendants for an alleged lack of handrails on the Cermak ramp. As such,

Defendants object that the information in this paragraph is immaterial and irrelevant. Notwithstanding and without waiving said objection, undisputed for purposes of summary judgment that this is the deposition testimony of Timothy Tyrrell.

53. The work orders produced by Cook County show five employees (Blase, Biedron, Johnson, Merkle, Schuch, and Veverka Jr) worked from 7:00 am to 3:00 pm on January 16, 2023, relating to the work order to install "ADA compliant handrails" on the Cermak ramp. Exhibit 20, Cook County – Reactive Work Orders at 1-2.

**RESPONSE:** As set forth in Defendants' response brief, neither Plaintiff nor any class member, who are all persons who used a wheelchair to traverse the Cermak ramp, have standing to bring a claim against Defendants for an alleged lack of handrails on the Cermak ramp. As such, Defendants object that the information in this paragraph is immaterial and irrelevant. Notwithstanding and without waiving said objection, disputed. The work order shows seven employees (Blase, Biedron, Boers, Johnson, Merkle, Schuch, and Veverka Jr) worked from 7:00 am to 3:00 pm on January 16, 2023, relating to the work order to "[r]emove existing handrails in ramp leading from tunnel to Cermak and replace with ADA compliant handrails." (Cook County – Reactive Work Order, Pl.'s Ex. 20, at 1, ECF No. 166-17.)

54. In response to interrogatories seeking a legal basis for the Cermak ramp not requiring handrails that comply with Section 4.8.5, defendant Cook County objected that the interrogatory was irrelevant and moot and "[n]otwithstanding and without waiving said objection, hand railings were installed on the Cermak Ramp as of October 2022." Exhibit 21, Cook County Amended Interrogatory Answers ¶¶ 8-9.

**RESPONSE:** As set forth in Defendants' response brief, neither Plaintiff nor any class member, who are all persons who used a wheelchair to traverse the Cermak ramp, have standing

to bring a claim against Defendants for an alleged lack of handrails on the Cermak ramp. As such, Defendants object that the information in this paragraph is immaterial and irrelevant. Notwithstanding and without waiving said objection, undisputed that the existing handrails were removed and replaced with ADA compliant handrails.

55.    The lead attorney for defendants represented to the Court on March 23, 2023, that installing the handrails on the Cermak ramp was "one of our best achievements while representing the County" that helped "resolve one aspect of this case." Dkt. 149, Transcript from 3/23/2023 Hearing at 7:1-8.

**RESPONSE:** Defendants object that this statement is neither evidence nor admissible. A district court "may consider only admissible evidence in assessing a motion for summary judgment." *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). "[I]t is universally known that statements of attorneys are not evidence." *Campania Management Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 853 (7th Cir. 2002); *see also R-Boc Representatives, Inc. v. Minemyer*, 233 F. Supp. 3d 647, 666 n.29 (N.D. Ill. 2017) (pointing out that "statements of lawyers are not evidence and do not count"). Notwithstanding and without waiving said objection, undisputed that defense counsel made this statement at the March 23, 2023, hearing.

56.    Defendants Sheriff and Cook County acknowledge receipt of federal financial assistance since at least 1988. Dkt. 54, Cook County Answer to Second Amended Complaint ¶ 5; Dkt. 55, Dart Answer to Second Amended Complaint ¶ 5.

**RESPONSE:** Defendants object that the cited exhibit does not support this statement of fact. This statement is also disputed. Defendants Sheriff and Cook County did not "acknowledge receipt of federal financial assistance since at least 1988." (*Id.*) Rather, Defendant Sheriff admitted only that "certain agencies within the Sheriff's Office have *at times* received federal funds for

certain programs" and that "some federal funds have been used for *drug treatment programs*." (Sheriff's Ans. ¶ 5, ECF No. 55, emphasis added.) Defendant Cook County admitted only that "certain agencies within Cook County have *at times* received federal funds" and that "some federal funds have been used for *drug treatment programs*." (Cook County's Ans. ¶ 5, ECF No. 54, emphasis added.)

Respectfully submitted,

KIMBERLY M. FOXX
State's Attorney of Cook County

Dated: December 18, 2023

/s/ *Samuel D. Branum*
Special Assistant State's Attorney

Brian P. Gainer (gainerb@jbltd.com)
Monica Burkoth (burkothm@jbltd.com)
Lisa M. McElroy (mcelroyl@jbltd.com)
Samuel D. Branum (branums@jbltd.com)
Johnson & Bell, Ltd.
33 W. Monroe, Ste. 2700
Chicago, Illinois 60603
(312) 372-0770