# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CORNELIUS WALKER,

Plaintiff,

v.

THOMAS DART, Sheriff of Cook
County, and COOK COUNTY,
ILLINOIS,

Defendants.

Case No. 20-cv-261

Judge Mary M. Rowland

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Cornelius Walker, a detainee at Cook County Jail, brought this action
against Sheriff Thomas Dart and Cook County, Illinois, (collectively "Defendants"),
as a class action under Section 202 of the Americans with Disabilities Act, 42 U.S.C.
§12132, Section 504 of the Rehabilitation Act, and 29 U.S.C. §794(a). Plaintiff claims
a ramp leading to Cook County Jail's Cermak Health Facility (the "Cermak ramp") is
non-compliant with ADA Structural Standards, impairs his and other similarly
situated detainees' access, and impacts a mobility impaired person's ability to safely
transport. Before the Court is Plaintiff's motion for permanent injunctive relief [209],
Plaintiff's motion for partial summary judgment [225], and Plaintiff's motion for leave
to supplement the complaint [228]. For the reasons stated below, Plaintiff's motion
for partial summary judgment [225] is denied for lack of standing. Plaintiff's case is
dismissed and all pending motions, including for permanent injunctive relief [209]
and for leave to supplement the complaint [228], are denied as moot.

1

## LEGAL STANDARDS

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id.* After a "properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 250 (quoting Fed. R. Civ. P. 56(e)).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.*

2

## BACKGROUND[1]

### A. Statutory Framework

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Under the Rehabilitation Act, "[n]o otherwise qualified individual with a disability… shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity" covered by the Act. 29 U.S.C. § 794(a). For public facilities built or altered after January 26, 1992, the public entity must ensure that the facility is not just possibly accessible but "readily accessible." 28 C.F.R. § 35.151(a), (b).

Regulations promulgated as the ADA Standards for Accessible Design[2] (referred herein as the "ADA Structural Standards") set forth construction and

---

[1] The facts in this Background section are undisputed unless otherwise noted. The Court takes these facts from Plaintiff's Statement of Facts [226], Defendants' Response to PSOF [239], Defendants' Statement of Additional Facts [240], and Plaintiff's Response to DSOAF [244], and various exhibits and declarations the parties have submitted in connection with Plaintiff's motion for summary judgment. Plaintiff challenges Defendants' Local Rule 56.1 responses [239] and has moved to strike 12 of their responses. [245] at 6–11. The Court maintains broad discretion to enforce the local rules governing summary judgment motions. *Petty v. City of Chicago*, 754 F.3d 416, 420 (7th Cir. 2014). The Court declines to strike responses outright but will address relevant facts and responses as they are pertinent to the issues herein. The Court will only consider factual material supported by the record and will disregard improper responses. *See Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006) (A party's statement of facts does not comply with Rule 56.1 if "it fail[s] to adequately cite the record [or is] filled with irrelevant information, legal arguments, and conjecture.").

[2] The requirements under the RHA are substantially similar. Following the practice of Plaintiff and Defendants, the Court will only refer to the ADA and the ADA Structural Standards going forward.

structural requirements to which newly constructed or altered facilities must comply. *See* 28 C.F.R. § 35.151(c). Buildings constructed or altered between July 26, 1992 and September 15, 2010 are subject to the 1991 ADA Structural Standards. 28 C.F.R. § 35.151(c)(1).

Under Section 4.8.2 of the 1991 ADA Structural Standards, the maximum rise for any ramp is 30 inches. Furthermore, pursuant to Section 4.8.5, ramps with a rise greater than 6 inches or a horizontal projection greater than 72 inches shall have handrails on both sides and those handrails must extend at least 12 inches beyond the top and bottom of a ramp segment when the handrails are non-continuous.

### B. Cook County Jail and Cermak Health Facility

Cook County owns Cermak Health Services Facility, which is used to provide health services for and house detainees on the Cook County Department of Corrections campus. [239] ¶¶ 4, 8; [244] ¶ 1. Construction of the facility commenced after July 26, 1992. [239] ¶ 4. A pedestrian and material access tunnel serves the Cermak facility at the basement level. *Id.* ¶ 5; [244] ¶ 2. The Cermak ramp connects the building to the tunnel and is used by civilian and security employees to enter Cermak, transport inmates, and move equipment. [239] ¶ 6. Inmates may traverse the Cermak tunnel via the ramp to obtain medical services or be transported to court. *Id.* ¶¶ 7–8, 12.

Cook County hired a third-party architectural/engineering firm, Globetrotters Engineering Corporation ("GEC"), to assess the ADA compliance of the Cermak Health Services Facility. *Id.* ¶ 52; [244] ¶¶ 5–6. On December 6, 2023, GEC submitted

the Corridor Ramp Accessibility Assessment to Cook County. [239] ¶ 53. Through the utilization of a three-dimensional LIDAR system, GEC's assessment found the Cermak ramp has a rise of 32.4 inches—2.4 inches over the maximum rise set forth in the ADA Structural Standards. *Id.* ¶ 54; [244] ¶¶ 9–11; [226-11] at 8. The ramp is continuous without a landing (*see* [239] ¶¶ 21, 62), lacked a handrail for part of the relevant time period (*id.* ¶¶ 23, 34, 46, 78), and the later-installed handrails do not extend 12 inches beyond the ramp (*id.* ¶ 60; [244] ¶ 13). GEC's assessment noted the wall configurations at the top and bottom of the ramp require a special type of fitting for handrails that is not available for anti-ligature handrails. [244] ¶ 13; [226-11] at 3. The parties dispute whether anti-ligature handrails are a necessary precaution in a jail setting. [244] ¶ 14.

Inmates are typically escorted up and down the Cermak ramp by a correctional officer, but dispute whether there is a policy or practice of officers pushing wheelchair-users. [244] ¶¶ 17–18, 22–24. On at least May 11, 2021, a sign was posted at the end of the Cermak ramp that stated inmates were "not to go up or down any ramps without an officer" and to "request help" if assistance was needed. [240-6].

### C. Plaintiff Cornelius Walker and Class Members

Mr. Walker initiated this action in 2020 on behalf of himself and those similarly situated to him. In March 2021, the Court certified the following class under Rule 23(b)(2): "all Cook County Jail detainees who have been assigned and currently use a wheelchair to traverse the Cermak ramp." [62] at 15.

While housed in Cermak, Plaintiff Walker filed a grievance stating he was "struggling up a hill [the Cermak ramp] and rolling down real fast with no assistance."[3] [222-7] at 1. He added the issue was ongoing over the prior three years when going back and forward to court and that he felt his "rights ha[d] been violated." *Id.* Other class members testified to their experiences traversing the Cermak ramp, which Defendants dispute. [239] ¶¶ 63, 66–72.

## ANALYSIS

## I. Plaintiff's Motion for Partial Summary Judgment

The Plaintiff Class moves for partial summary judgment on the discrete question of whether the Cermak ramp violated and continues to violate the ADA Structural Standards from May 5, 2018 until Defendants renovate the ramp and certify that it complies with the ADA. [227] at 1, 12. For the reasons explained below, this Court denies Plaintiff's motion and concludes that Walker has not established Article III standing.

### a. Article III Standing

First, the Court must consider the threshold issue of Article III standing. *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 461 (7th Cir. 2020) ("If a plaintiff lacks standing, a federal court lacks jurisdiction."). Defendants contend Plaintiff's motion must be denied for lack of jurisdiction because Plaintiff cannot satisfy his burden to establish that he had standing at the time of initiating this suit, or alternatively, that

---

[3] Defendants argue the grievance is vague and that is it unclear whether the "hill" at issue is the Cermak ramp. The Court rejected this argument when denying Defendants' motion to dismiss for failure to exhaust administrative remedies. [88] at 2. Defendants provide no new evidence, and the Court finds no reason to abandon its previous finding.

other class members have standing. [241] at 5–11. Plaintiff responds that Plaintiff Walker and the class have standing. [227] at 8–10; [245] at 2–6.

As the party invoking federal jurisdiction, a plaintiff bears the burden of demonstrating he satisfies the elements of Article III standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021). The elements of Article III standing are that a plaintiff "(1) suffered an injury in fact; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed by a favorable judicial decision." *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007 (7th Cir. 2021). In addition, when a plaintiff seeks injunctive relief, he must also offer evidence of a "real and immediate"—and not just a "conjectural or hypothetical"—threat of a future violation of his rights. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (citation and internal quotation marks omitted); *Scherr v. Marriott Inter'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir.2013). To establish standing at the summary judgment stage of litigation, a plaintiff must set forth by affidavit or other evidence specific facts demonstrating that he has suffered a concrete and particularized injury. *Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282, 284 (7th Cir. 2020) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)) (internal quotations omitted).

Specifically, Defendants challenge the sufficiency of the evidence regarding whether Plaintiff (or other class members) suffered an injury in fact and whether the alleged injury is fairly traceable to the challenged conduct of Defendants, *i.e.*, the

failure to repair the Cermak ramp. [241] at 7–11. Plaintiff argues Walker (and the class) have standing. [227] at 8–10; [245] at 2–6, 12–13.

Encounters with access barriers confers Article III standing for ADA plaintiffs. *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1042 n.5 (9th Cir. 2008). "Once a disabled individual has encountered … alleged ADA violations that … interfere with his access to a place of public accommodation, he has already suffered an injury in fact traceable to the defendant's conduct … so he possesses standing under Article III." *Id.* The encountered barrier must be linked to the nature of the plaintiff's disability and interfere with the plaintiff's full and equal enjoyment of the facility, making his use of the facility more difficult than a nondisabled individual's, to constitute an injury-in-fact. *Chapman v. Pier I Imports (U.S.), Inc.*, 631 F.3d 939, 947 n.4 (9th Cir. 2011); *see also Lacy v. Cook Cnty., Illinois*, 897 F.3d 847, 853 (7th Cir. 2018) ("Perhaps the most obvious example of such discrimination is when structural barriers prevent people with disabilities from accessing otherwise available public services."). A plaintiff must prove this injury. *Chapman*, 631 F.3d at 947 n.4.

There is no genuine dispute that Plaintiff Walker is paralyzed and uses a wheelchair for mobility between places. Defendants have admitted Walker has a medical alert for para/tetraplegia ([54] Cook County's Answer to Second Amended Complaint ¶ 6; [55] Sheriff Dart's Answer to Second Amended Complaint ¶ 6). On October 17, 2018, Walker filed a grievance to which a correctional officer responded regarding the staff's obligations to "inmates in wheelchairs." [222-7] at 2. It is undisputed that Walker complained in the grievance that he was "[s]truggling up [the

Cermak ramp] and rolling down real fast with no assistance." [239] ¶ 64 (quoting [222-7] at 1). Walker also explained the issue was ongoing for three years and arose when traveling to and returning from court appearances. [222-7] at 1. Plaintiff contends—without citation to any evidence—the non-compliant structure deprived him of the ability to use the ramp "on the same basis as other inmates." [245] at 3 (citing *Jaros v. Illinois Dep't. of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012) and *Shuhaiber v. Illinois Dep't of Corr.*, 980 F.3d 1167, 1170 (7th Cir. 2020). But Walker presents no evidence other than the grievance to support that his access was different than other inmates.

Defendants argue this evidence is insufficient to establish standing at the summary judgment stage of litigation. [241] at 7–9. They contend neither rolling fast nor struggling up a ramp are injuries. *Id.* at 8–9 (discussing *DeBoard v. Solid Rock Properties, LLC*, No. 1:22-CV-435-HAB, 2024 WL 1344761 (N.D. Ind. Mar. 29, 2024) and *Harper v. Dart*, No. 14 C 01237, 2015 WL 6407577 (N.D. Ill. Oct. 21, 2015)). Plaintiff responds that Defendants' legal authorities are easily distinguishable. [245] at 4–5. The Court agrees that Plaintiff has failed to present sufficient evidence to satisfy his burden to establish standing.

Akin to Walker's complaint of "[s]truggling up [the Cermak ramp] and rolling down real fast with no assistance," the disabled detainee-plaintiff in *Harper* averred he experienced "great difficulty" showering, toileting, and getting into bed. 2015 WL 6407577, at *4. The court explained "great difficulty," like "struggling," did not explain how the plaintiff was denied equal access and therefore held these bare

9

conclusions did not adequately allege enough facts to allow a plausible inference that the failure to give different accommodations denied the plaintiff access equal to that of other prisoners. *Id.* Plaintiff Walker's attempt to distinguish *Harper* on the ground that the plaintiff amended his complaint to add detail is not convincing. [245] at 3 n.1. Regardless of whatever additional facts were pleaded in *Harper*, it remains that the only evidence before this Court for consideration on Plaintiff's motion for summary judgment is analogous to what was insufficient under a less demanding standard in *Harper*. *See Spuhler*, 938 F.3d at 284.

Defendants' reliance on *DeBoard* is less persuasive. Walker effectively distinguishes the "struggle" he faced traversing the Cermak ramp over a period of multiple years with the "frustration, physical difficulty, indignation, and emotional distress" alleged by the fair housing tester in *DeBoard*. 2024 WL 1344761, at *2.[4] Although evidence of Walker's actual diminished access is lacking, as discussed above, the Court agrees Plaintiff's history of being detained at Cook County Jail, as evidenced by his grievance, means he is differently situated from a tester plaintiff. Accordingly, the Court does not rely on *DeBoard* to reach its conclusions.

---

[4] *DeBoard* presents the issue of "intangible, emotional injuries." *Id.* There, the court explained that the Seventh Circuit has repeatedly held that emotional hardships, such as stress, annoyance, intimidation, infuriation, disgust, indignation, embarrassment, and confusion, are not concrete injuries that confer Article III standing. *Id.* (citing *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668-69 (7th Cir. 2021)). Plaintiff argues "intangible harms arising from statutory violations can satisfy the injury-in-fact requirement so long as they are sufficiently concrete." [245] at 4 (quoting *Patterson v. Howe*, 96 F.4th 992, 996 (7th Cir. 2024)) (cleaned up). The Court need not decide this issue as Plaintiff submitted no evidence that he suffered a concrete harm from the alleged ADA violations.

Plaintiff's own case law also weighs in favor of Defendants. In *Shuhaiber*, the Seventh Circuit affirmed the dismissal of a suit where the plaintiff alleged difficulties getting into his lower bunk and using the table in his cell as well as being transported in vans that were not ADA compliant, but "did not say anything about his particular circumstances or accommodations that kept him from accessing the Center's facilities or services on the same basis as other inmates." 980 F.3d at 1170 (citing *Wagoner v. Lemmon*, 778 F.3d 586, 593 (7th Cir. 2015) (concluding that the inconvenience of longer waits and humiliation of transport in a noncompliant van, including crawling off a "regular van," does not amount to denial of services)). The case was dismissed with prejudice; however, the opinion suggested the outcome may have been different if the plaintiff alleged he missed medical appointments due to the inadequacy of the vans. *Id.*

To the contrary, in *Jaros*, the Seventh Circuit determined the plaintiff pleaded a plausible claim that the Illinois Department of Corrections' refusal to accommodate his disability kept him from accessing meals and showers on the same basis as other inmates. 684 F.3d at 672. There, the plaintiff alleged he feared falling when using the toilet or shower and thus limited himself to taking only four showers monthly. *Id.* at 669. He also alleged that he missed meals on occasion because he could not walk fast enough to the cafeteria. *Id.* Unlike the plaintiff in *Jaros* but like the plaintiff in *Shuhaiber*, Walker failed to present evidence "about his particular circumstances … that kept him from accessing the … facilities or services on the same basis as other inmates." *Shuhaiber*, 980 F.3d at 1170.

11

Plaintiff's reliance on the testimony of Eric Davis, the Deputy Director of the Cook County Department of Capital Planning and Policy and the lead person for Cook County's efforts to renovate the Cermak ramp, cannot overcome the lack of evidence of a concrete injury. *See* [245] at 3–4. Davis testified handrails "allow someone to steady themselves, whether they're walking or in a wheelchair, to provide stability when they're walking or in a wheelchair." [226] ¶ 30. He also testified landings allow for breaks (*id.* ¶ 58) and without a landing "[a wheelchair user] might accelerate too much and really create a hazardous condition" ([244-1] at 159: 17–19). As an initial matter, Defendants challenge the admissibility of these statements and cite compelling countervailing testimony. [239] ¶¶ 30, 58; *see also* [241] at 13. Regardless, Davis's testimony about the general purpose of ramp landings and handrails is too speculative to substantiate that Walker's injuries are "concrete and particularized" and "actual or imminent." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1020 (7th Cir. 2016) ("Allegations that some litigants with disabilities may suffer discrimination when they enter the [courthouse] are not enough to show a genuine issue of material fact about whether [plaintiff] personally suffered discrimination when he went to court."); *Lujan*, 504 U.S. at 560 n.1 ("By particularized, we mean that the injury must affect the plaintiff in a personal and individual way."); *see also Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) (noting that "our favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture") (cleaned up).

Finally, Plaintiff's reliance on *Scherr v. Marriott Intern., Inc*, 703 F.3d 1069 (7th Cir. 2013), *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133 (9th Cir. 2002), and the "deterrent effect doctrine for ADA standing" is unavailing. [245] at 5–6. Plaintiff has submitted no evidence of his being deterred. *See Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir.2005) (declining to "scour" the record to help a party overcome summary judgment). "For a deterrence injury to be sufficiently concrete and non-speculative, the deterrence must be reasonable." *Access Living of Metro. Chicago v. Uber Techs., Inc.*, 351 F. Supp. 3d 1141, 1149 (N.D. Ill. 2018), *aff'd*, 958 F.3d 604 (7th Cir. 2020). Here, there is no concrete or non-speculative evidence of deterrence to consider.

By finding Plaintiff fails to meet his burden to establish standing, the Court does not set a high standard. Plaintiff may have adequately alleged standing at the pleading stage, but "as the litigation progresses, the way in which the plaintiff demonstrates standing changes." *Spuhler*, 983 F.3d at 285. As set forth above, "[t]he standard for demonstrating the jurisdictional facts at summary judgment is whether the plaintiffs have supplied evidence of "specific facts" that, taken as true, show each element of standing." *Id.* at 286 (citing *Lujan*, 504 U.S. at 561).

Finally, Plaintiff argues even if he lacks standing, the requirement of standing can be satisfied if at least one member of the certified class has standing and can replace the named representative. [245] at 13 (citing *Kohen v. Pacific Inv. Management Co. LLC*, 571 F.3d 672, 676 (7th Cir. 2009); *Lacy*, 897 F.3d at 867 n.40). Not so. It is well-established that a plaintiff must have Article III standing at the

time a complaint is filed. *See Sosna v. Iowa*, 419 U.S. 393, 402 (1975). A litigant's role as a named plaintiff who represents members of a class does not disturb this requirement. *Payton v. County of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) ("a person cannot predicate standing on injury which he does not share"). In other words, the named plaintiff must have standing before class certification and replacement is only appropriate if the class representative only loses standing after initiating the suit. *See Kohen*, 571 F.3d at 676 ("*Before* a class is certified, it is true, the named plaintiff must have standing, because at that stage no one else has a legally protected interest in maintaining the suit.") (emphasis in original); *see also Walters v. Edgar*, 163 F.3d 430, 432 (7th Cir. 1998). Accordingly, Plaintiff Walker must show he independently had standing at the time he filed this lawsuit in 2020; evidence of other class members' standing will not suffice. Plaintiff has not done so.

## II. Motion for Permanent Injunctive Relief and Motion for Leave to Supplement the Complaint

Plaintiff's remaining motions are predicated on him having Article III standing. Plaintiff's case is dismissed on the merits and the pending motions are denied as moot.

## CONCLUSION

For the stated reasons, Plaintiff's motion for partial summary judgment [225] is denied. Judgment entered in favor of Defendants. Civil case terminated.

E N T E R:

Dated: January 21, 2025

_____

MARY M. ROWLAND
United States District Judge